UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM MUNDELL, ROBYN MUNDELL, ALEXANDER MUNDELL, and LILY MUNDELL,<br><br>        Plaintiffs,<br><br>    -v-<br><br>VALERIE NATSIOS-MUNDELL,<br><br>        Defendant. | 24-cv-2800 (JSR)<br><br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

    Plaintiffs in the above-captioned case filed this lawsuit in New York state court in March 2024. Defendant then removed the case to federal court, and in response, plaintiffs amended their complaint and moved to remand the case back to state court. Plaintiffs' motion to remand requires the Court to determine whether the "complete-preemption" doctrine under the Employee Retirement Income Security Act of 1974 ("ERISA") supplies federal jurisdiction in this case. Because the state-law claims alleged in plaintiffs' complaint do not sufficiently implicate ERISA so as to be covered by its exclusive civil remedy under the two-part test outlined by the Supreme Court in Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), the Court grants plaintiffs' motion to remand.

I.   **Background**

    This case involves a family dispute over money. Dr. Robert Mundell was a Nobel prize-winning economist who worked, at various points in his career, at Johns Hopkins University, the University

of Chicago, and Columbia University. Compl. ¶ 13. As a benefit of his employment, Dr. Mundell held retirement accounts with each institution, maintained by TIAA-CREF. Id. ¶¶ 22, 26, 28. Dr. Mundell had three children with his first wife; plaintiffs in this case are two of these children and two grandchildren.[1] Id. ¶¶ 10-11, 18-20. Dr. Mundell later remarried and had another son; his second wife is the defendant. Id. ¶¶ 14, 16.

The allegations in the complaint stem from Dr. Mundell's decline in health. Plaintiffs allege that Dr. Mundell suffered a "massive stroke" in October 2013 that left him unable to speak, read, write, or move. Id. ¶¶ 39, 41. During this period, defendant cared for Dr. Mundell. Id. ¶ 44. But despite the limitations on his ability to communicate, Dr. Mundell -- according to plaintiffs -- still "expressed as best he could" that he wanted his assets divided equally among defendant and his children. Id. ¶ 45. Plaintiffs understood that Dr. Mundell's assets, in addition to bank accounts overseas and an Italian villa, included the aforesaid retirement accounts, valued at over $4 million. Id. ¶¶ 23-25, 49, 54. Plaintiffs further allege that Dr. Mundell's beneficiary designations with TIAA-CREF, at least until 2014, reflected his desire for his children to inherit a pro rata share of his retirement accounts. Id. ¶¶ 35-38.

---

[1] One of Dr. Mundell's three children with his first wife died in 2018. Compl. ¶¶ 11, 17.

Dr. Mundell died in 2021. Id. ¶ 46. The complaint alleges that defendant claimed title to 100% of the retirement accounts soon after and began receiving regular payments under the plan. Id. ¶¶ 93-94. Only in late 2022 did plaintiffs discover that Dr. Mundell had submitted a change-of-beneficiary form in January 2014 that designated defendant as sole beneficiary of the retirement accounts. Id. ¶ 95. Plaintiffs assert that the change-of-beneficiary form was submitted online, but, they allege, Dr. Mundell could not operate a computer or otherwise communicate at that time. Id. ¶¶ 63-65. Accordingly, plaintiffs accuse defendant of using Dr. Mundell's log-in credentials -- without his consent -- to remove plaintiffs as beneficiaries of the retirement accounts and secure her own position as sole beneficiary. Id. ¶¶ 69-74.

Upon learning of Dr. Mundell's change of beneficiary, plaintiffs filed competing claims with the Columbia University and Johns Hopkins University retirement plans. See Def.'s Opp'n to Mot. to Remand at 5-6 [hereinafter Opp'n]; Pls.' Reply Mem. of Law in Supp. of Mot. to Remand at 2 [hereinafter Reply]. The plan administrators ultimately denied plaintiffs' claims in early 2023, leaving defendant as the sole beneficiary. Opp'n at 6; Reply at 2. Plaintiffs did not directly appeal the plan administrators' distributions of benefits. Decl. of Valerie Natsios-Mundell ¶¶ 38-39, 42-43, ECF No. 11-1; Reply at 2.

Instead, plaintiffs initiated this lawsuit in New York state court in March 2024, bringing claims for conversion and fraud based on defendant's alleged role in submitting the change-of-beneficiary form in 2014. See generally Compl. Defendant then removed the case to federal court, asserting that the Court has both diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction -- through ERISA's exclusive civil remedy -- under 28 U.S.C. § 1331.[2] See Notice of Removal at 1-5, ECF No. 1. Plaintiffs then amended their complaint and moved to remand the case back to state court. See ECF Nos. 6, 8.

## II. Analysis

### A. Plaintiffs' Amended Complaint

As an initial matter, the parties debate which complaint the Court should consider for purposes of deciding the plaintiffs' motion to remand. The original and amended complaints are nearly identical, but the dispute over which complaint is the proper subject of the Court's analysis stems from one part of the plaintiffs' "Request for Relief" included in the original complaint and excised from the amended complaint. That part of the Request asks the Court to "[d]eclar[e] the Change of Beneficiary

---

[2] Defendant no longer argues that the Court has diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction does not exist because defendant is a United States citizen domiciled in Italy, and "a suit by or against United States citizens domiciled abroad may not be premised on diversity." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990).

naming Defendant the sole beneficiary of the Retirement Accounts void ab initio due to the nature by which the said change of beneficiary was willfully and maliciously made either by Defendant, someone at the behest of Defendant or as the result of undue influence by Defendant of Dr. Mundell." Compl. at 17.

"In considering a motion to remand, courts generally look at the original complaint." In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d 378, 393 (S.D.N.Y. 2014); see also McCulloch Orthopedic Surgical Servs., PLLC v. United Healthcare Ins. Co. of N.Y., No. 14-cv-6989, 2015 WL 3604249, at *3 (S.D.N.Y. June 8, 2015) ("It is settled law that a motion to remand is evaluated on the basis of the allegations as pleaded at the time of removal. Post-removal amendments to the pleadings should not be considered.") (citing Vera v. Saks & Co., 335 F.3d 109, 116 n.2 (2d Cir. 2003) (per curiam); Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939)).

There is no reason to depart from that general principle in this case. Plaintiffs cite an unpublished district court opinion to support their argument that the Court should look to the amended complaint. That case involved state-law fraud claims that were removable under a provision of the Securities Litigation Uniform Standards Act ("SLUSA") that extends federal jurisdiction to class actions that include, among other requirements, "more than 50 persons." Spehar v. Fuchs, No. 02 Civ. 9352, 2003 WL 23353308, at

*3 (S.D.N.Y. June 18, 2003). After removal, plaintiffs amended their complaint to drop three class members, thus reducing the total size of the class below the 50-person jurisdictional threshold under the SLUSA. Id. at *2-3. Left with only state-law claims, the court granted plaintiffs' motion to remand. Id. at *11.

This court, however, need not decide whether or not the decision in Spehar is correct, because the instant case, by contrast, requires the Court to determine whether plaintiffs' state-law claims are, in reality, federal claims by operation of ERISA's complete-preemption doctrine and, by extension, whether subject-matter jurisdiction exists. Plaintiffs' request for declaratory relief -- whether included in or excluded from the complaint -- does not affect the Court's analysis of its jurisdiction because "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts." Correspondent Servs. Corp. v. First Equities Corp. of Fla., 442 F.3d 767, 769 (2d Cir. 2006).

Accordingly, the rule that plaintiffs would derive from Spehar is inapplicable here where there exists no independent federal claim that had initially justified removal but has subsequently been eliminated, leaving only state-law claims in place. Rather than decide whether to retain jurisdiction over orphaned state-law claims -- either federal in nature when first

removed, as in <u>Spehar</u>, or initially justified as an exercise of supplemental jurisdiction under 28 U.S.C. § 1367, as in many other cases -- the Court must determine whether it has jurisdiction in the first instance through the complete-preemption doctrine under ERISA.

**B.  Motion to Remand**

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. "The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction." <u>McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.</u>, 857 F.3d 141, 145 (2d Cir. 2017). "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states," the Court "must resolve any doubts against removability." <u>In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.</u>, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks and alteration omitted).

One source of original jurisdiction is 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States." Typically, in determining whether a case presents a "federal question," courts turn to the "well-pleaded complaint rule," which provides that "federal

jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc v. Williams, 482 U.S. 386, 392 (1987). A corollary of this principle is that "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction." Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004).

"Congress has, however, created certain exceptions to that rule." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Specifically, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). In other words, "[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." Davila, 542 U.S. at 207 (internal quotation marks omitted).

ERISA -- which Congress enacted to "protect … the interests of participants in employee benefit plans and their beneficiaries," and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts" -- is an example of such a federal statute. 29 U.S.C. § 1001(b). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." Davila, 542 U.S. at 208. An important aspect of that regime is ERISA's "integrated enforcement mechanism," id., which is codified in § 502(a) and "represents a careful balancing

of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans," Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987). The Supreme Court has concluded that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Davila, 542 U.S. at 209 (quoting Metro. Life, 481 U.S. at 65–66). Otherwise, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Pilot Life, 481 U.S. at 54.

But not all state law claims that relate to an employee-benefit plan are subject to this "extraordinary" power. To identify those claims that sufficiently implicate the careful policy balance struck by Congress when it included only certain remedies in ERISA's enforcement regime, the Court must look to § 502(a)(1)(B), which provides: "A civil action may be brought -- (1) by a participant or beneficiary -- ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In Aetna Health Inc. v. Davila, 542

U.S. at 210, the Supreme Court provided a general test to interpret the preemptive scope of this provision: "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."

The Second Circuit has elaborated on the Davila test, further dividing the first prong -- whether the "individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)" -- into two steps. First, the Court must "consider whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B)." Montefiore Med. Ctr. v. Teamsters Loc. 272, 642 F.3d 321, 328 (2d Cir. 2011). Second, it must "consider whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." Id. After assessing the two steps of the first prong, the Court should address the second prong of the Davila test -- whether any "other independent legal duty … is implicated by a defendant's actions." Id. Ultimately, "a state-law cause of action is preempted only if both prongs of the test are satisfied." Id.

> i. **Davila: Prong 1, Step 1**

The first step of the first prong of the Davila test requires the Court to determine "whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B)." Under § 502(a),

a civil action may be brought "by a participant or beneficiary" to recover benefits due to him under the terms of the plan. See 29 U.S.C. § 1132(a)(1)(B). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Id. § 1002(8). "Generally, § 502(a) is narrowly construed to permit only the enumerated parties to sue directly for relief." Montefiore, 642 F.3d at 329.

Defendant argues that the allegations in the complaint establish that plaintiffs are "beneficiar[ies]" of the ERISA pension plans. To support her preferred reading of "beneficiary," defendant points to Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989), in which the Supreme Court interpreted ERISA's definition of "participant" -- which includes similar "may become eligible" language to the definition of "beneficiary" -- to cover a claimant with a "colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Relying on this definition, defendant argues that as "competing claimants to a benefit," plaintiffs should be "treated as beneficiaries for purposes of making their case." Opp'n at 15.

Defendant, however, omits key context when citing allegations in the complaint to support her argument. Specifically, defendant points to a part of the complaint describing Dr. Mundell's initial

designation of plaintiffs as "beneficiaries of his accounts maintained with TIAA-CREF." Id. at 15-16; see also Compl. ¶¶ 35-38. But defendant fails to address subsequent allegations in the complaint, including that "[o]n or about January 4, 2014, a change of beneficiary designation was filed with TIAA-CREF, which designated Defendant as the beneficiary of 100% of Dr. Mundell's Retirement Accounts." Compl. ¶ 62; see also id. ¶ 78 ("On January 8, 2014 TIAA-CREF sent a letter to Dr. Mundell at his Claremount Avenue residence confirming Defendant was the primary 100% beneficiary of Dr. Mundell's accounts."). Contrary to defendant's argument, these allegations support the conclusion that plaintiffs were not beneficiaries at the time of Dr. Mundell's death.

To be sure, plaintiffs allege that the change of beneficiary resulted from defendant's fraudulent scheme. But it does not follow from allegations of impropriety on defendant's part that plaintiffs were "beneficiaries" with a "colorable claim" to benefits. In other words, plaintiffs' technical eligibility for benefits under Dr. Mundell's ERISA plan is a matter separate from defendant's alleged impropriety in securing sole claim to the benefits at issue. Indeed, the complaint acknowledges that "TIAA-CREF as Funding Agent, and the Retirement Plans as agent[s] for Plaintiffs had no reason to believe the January 2014 beneficiary designation was filed by anyone other than Dr. Mundell and reasonably relied on it as an expression of intent by Dr. Mundell

12

that Defendant be beneficiary of 100% of the Retirement Accounts to Plaintiffs' determinant [sic] as principals of the agency of TIAA-CREF and the Retirement Accounts." Id. ¶ 121.

Defendant's related argument -- that Davila requires only that "at some point in time" plaintiffs could have brought a § 502(a) claim for benefits -- fails for similar reasons. The complaint provides no basis to conclude that plaintiffs could have instituted a civil action under § 502(a) as "beneficiar[ies]" because, as just explained, it admits that a change-of-beneficiary form was filed, which the plan administrators reasonably interpreted to reflect Dr. Mundell's desired distribution of his plan benefits. In these circumstances, defendant has failed to explain when or how plaintiffs could have initiated suit under § 502(a), and has also failed to cite any caselaw in support of her preferred interpretation.

Plaintiffs' decision to file claims with the ERISA pension plans does not alter this conclusion. As a logical matter, the mere fact of filing a claim does not reflect the merits of that claim. It might be frivolous, "colorable," or a sure-fire winner. Moreover, plaintiffs' claims were, in fact, rejected by plan administrators, and plaintiffs did not appeal the administrators' decisions or otherwise file a civil suit challenging the administrators' disposition of plaintiffs' putative claims.

ii. **Davila**: Prong 1, Step 2

The second step of the first prong of the Davila test requires the Court to "consider whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." "A colorable ERISA claim exists when the claim 'implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan.'" McCulloch, 857 F.3d at 149 (quoting Montefiore, 642 F.3d at 325).

Because defendant does not distinguish between the two steps of the first prong of the Davila test, her arguments on the second step fail for many of the same reasons just addressed in reviewing the first step. Most directly, the complaint does not challenge the plan administrators' benefit determinations but rather the defendant's conduct, unrelated to the plan's terms. To the extent that defendant suggests that plaintiffs could have sued under § 502(a) at some earlier time -- perhaps after submitting their claims to the plan administrators -- she again does not recognize that plaintiffs' suit seeks to hold her liable rather than challenge the plan administrators' distributions of benefits.

This conclusion is reinforced by observing that the Second Circuit has limited the categories of defendants who may be sued under § 502(a)(1)(B) to "a claims administrator that exercises total control over the plan claims process," N.Y. State Psychiatric Ass'n v. UnitedHealth Grp., 798 F.3d 125, 133 (2d Cir. 2015), and

to "the plan and the administrators and trustees of the plan in their capacity as such," Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989). See also Larson v. United Healthcare Ins. Co., 723 F.3d 905, 913 (7th Cir. 2013) ("By necessary implication, however, a cause of action for 'benefits due' must be brought against the party having the obligation to pay. In other words, the obligor is the proper defendant on an ERISA claim to recover plan benefits. Typically the plan owes the benefits and is the right defendant.") (citations omitted). That plaintiffs could not have sued defendant under § 502(a)(1)(B) supports the conclusion that their state-law claims against defendant -- who has no control over the plan's "coverage and benefit determinations" -- are not "colorable claims" under § 502(a)(1)(B).

It is helpful to contrast this case with a state-law claim against a plan administrator alleging, for example, that the administrator has improperly excluded plaintiffs from receiving benefits under an ERISA-covered plan. In resolving that dispute -- whether pursued under contract or tort -- a Court's decision would necessarily implicate "benefit determinations" because to decide whether the administrator had breached its duty by failing to authorize plaintiffs' benefit claim, the Court would have to assess the correctness -- under the terms of the plan -- of that distribution. By contrast, here, the Court can accept that the administrator disbursed the benefits in accordance with the plan

and still determine whether the defendant breached the state-law duties alleged in the complaint.

Accordingly, the "actual claim" asserted by plaintiffs in this case cannot be construed as a "colorable claim for benefits pursuant to § 502(a)(1)(B)."[3]

### iii. Davila: Prong 2

Although the Davila test is "conjunctive" -- which means that defendant has not met her burden to prove complete preemption by failing on the first prong alone -- the Court still considers the second prong, which provides that ERISA completely preempts claims when "there is no other independent legal duty that is implicated by a defendant's actions." Davila, 542 U.S. at 210. In other words, a claim fails to satisfy the second prong when it "could have been brought under ERISA, but also rests on another independent legal duty that is implicated by the defendant's actions." Montefiore,

---

[3] The declaratory relief requested in plaintiffs' original complaint (and deleted in the amended complaint) clearly implicates "benefit determinations" under the relevant plans. It asks that the Court "[d]eclar[e] the Change of Beneficiary naming Defendant the sole beneficiary of the Retirement Accounts void ab initio." Compl. at 17. But using that requested relief to support the complete-preemption argument confronts two issues. To start, a request for declaratory relief is not a "claim" as traditionally understood; indeed, the Declaratory Judgment Act creates an additional remedy and expressly disclaims providing jurisdiction. But even if the relief requested is understood as a general "claim" under § 502(a) challenging a benefit determination, it runs headlong into the same problems discussed above, viz., that defendant is not among the category of defendants subject to suit and that the actual allegations underlying the complaint focus on conduct separate from the administration of claims.

642 F.3d at 328 (internal quotation marks and alterations omitted). To identify whether another legal duty is "independent," courts assess whether the defendant's obligations are "inextricably intertwined with the interpretation of Plan coverage and benefits." See Montefiore, 642 F.3d at 332; Arditi v. Lighthouse Int'l, 676 F.3d 294, 299 (2d Cir. 2012); McCulloch, 857 F.3d at 150.

The Second Circuit's analysis of the second prong in McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc., 857 F.3d 141 (2d Cir. 2017), is instructive. In McCulloch, plaintiff -- an orthopedic surgeon -- sought reimbursement from Aetna for performing two knee surgeries on a patient who was a member of an Aetna-administered health-care plan that was governed by ERISA. Id. at 143-44. Plaintiff was an "out-of-network" provider, so his office staff called an Aetna representative, who indicated that the plan would pay out-of-network physicians at "seventy percent of the usual, customary, and reasonable … rate for the knee surgeries." Id. at 144. However, after plaintiff performed the surgeries, Aetna's reimbursement was over $30,000 short of its promise; plaintiff filed a single promissory-estoppel claim in state court to recover the difference. Id. When considering whether ERISA completely preempted the promissory-estoppel claim -- and thus provided a basis for subject-matter jurisdiction -- the Second Circuit concluded that "any legal duty Aetna has to reimburse

McCulloch is independent and distinct from its obligations under the patient's plan." Id. at 150. Specifically, "McCulloch's promissory-estoppel claim against Aetna ar[o]s[e] not from an alleged violation of some right contained in the plan, but rather from a freestanding state-law duty grounded in conceptions of equity and fairness." Id.

Likewise, in this case, even assuming defendant has some legal duty under the plan, her obligation not to take another's property as her own, or not to obtain that property through fraud, is "independent and distinct" from any obligation imposed by the plan. As in McCulloch, defendant's duty does not arise from "some right contained in the plan, but rather from a freestanding state-law duty" grounded in the protection of property and maintenance of relationships in an orderly society. Again, it bears repeating that plaintiffs' claims are not "inextricably intertwined," because the allegations in the complaint target defendant's conduct and not the plan administrators' identification of beneficiaries or distribution of benefits. Indeed, plaintiffs' reply brief expressly admits: "Plaintiffs were not named beneficiaries at Dr. Mundell's death and seek damages from Defendant, the named beneficiary. … They do not seek to enforce their rights 'under the terms of the plan' or to clarify their rights to future benefits 'under the terms of the plan.'" Reply at

8. In sum, defendant's conduct, as alleged in the complaint, implicates an "independent legal duty."

\*    \*    \*

Defendant's strongest argument goes beyond the <u>Davila</u> test, accusing plaintiffs of "deliberate craft and wiles designed to avoid the effect of ERISA preemption." Opp'n at 1; <u>see also</u> <u>id.</u> at 19 ("These denied claims are now 'artfully' alleged by plaintiffs to be 'conversion' and 'fraud.'"). This argument, however, rests on a common point of confusion: complete versus express preemption. In fact, one of the cases cited by defendant for support involved state-law claims preempted by ERISA's express -- rather than complete -- preemption doctrine. <u>See</u> <u>Chau v. Hartford Life Ins.</u> <u>Co.</u>, 167 F. Supp. 3d 564, 570-73 (S.D.N.Y. 2016) (identifying "some confusion regarding two separate, but related, doctrines of preemption applicable to ERISA," and finding claims expressly preempted -- rather than completely preempted -- by ERISA).

Express preemption, in contrast to the jurisdictional character of complete preemption, is an "ordinary defensive preemption claim" that "cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint." <u>Wurtz v. Rawlings Co., LLC</u>, 761 F.3d 232, 238 (2d Cir. 2014). Moreover, it employs a broader test for preemption, found in another provision of ERISA, that limits "any and all State laws insofar as they may now or hereafter relate to any employee benefit

plan." 29 U.S.C. § 1144(a). The phrase "'relates to' must be construed in its normal sense -- that is, a state law claim is preempted if it has a connection with or reference to such a plan." Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 326-27 (2d Cir. 1985) (internal quotation marks omitted).

But because the Court lacks subject-matter jurisdiction over this case, it has "no occasion to consider the merits of … [the] argument that the plaintiffs' … claims … are subject to ordinary preemption." Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 277 (2d Cir. 2005). Instead, "[a] federal express preemption defense to a state law claim must be raised in and decided by the state courts." Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC, 102 F.4th 572, 600 (2d Cir. 2024). So it will be up to the state court -- should it be presented with an "express preemption" defense -- to consider whether plaintiffs' claims are "related" to the ERISA-governed plans, see, e.g., Rosen v. UBS Fin. Servs. Inc., No. 22-cv-3880, 2023 WL 6386919, at *5 (Sept. 29, 2023) (explaining that ERISA can expressly preempt "'common law tort' claims that relate to benefit plans"), and to determine whether the plan benefits have been paid out in full, see, e.g., McCarthy v. Est. of McCarthy, 145 F. Supp. 3d 278, 288 (S.D.N.Y. 2015) ("As many courts have held … , after proceeds have been distributed, parties' rights and equities may be determined without regard to ERISA because post-distribution suits do not

interfere with any of those objectives."). In other words, the instant decision ends the discussion of ERISA preemption only in this Court.

## III. Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion to remand.

SO ORDERED.

New York, NY
October 8, 2024

JED S. RAKOFF, U.S.D.J.